IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 19, 2020

**CUBEN LAGRONE v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Knox County**
**No. 112431   Bobby R. McGee, Judge**

_____

**No. E2019-01825-CCA-R3-PC**

_____

The petitioner, Cuben Lagrone, appeals the denial of his post-conviction petition, arguing the post-conviction court erred in finding he received the effective assistance of counsel at trial. Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and CAMILLE R. MCMULLEN, JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee, for the appellant, Cuben Tajuan Lagrone.

Herbert H. Slatery III, Attorney General and Reporter; Ronald L. Coleman, Assistant Attorney General; Charme P. Allen, District Attorney General; and Takisha M. Fitzgerald, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

**I.    Trial**

After firing multiple gunshots at the home of Oracle West and LaJuan Harbison on August 10, 2012, the petitioner was convicted of attempted second degree murder, employing a firearm during the commission of attempted second degree murder, attempted first degree premeditated murder, employing a firearm during the commission of attempted first degree premeditated murder, and reckless endangerment. *State v. Cuben T. Lagrone*, No E2014-02402-CCA-R3-CD, 2016 WL 5667514, at *1 (Tenn. Crim. App. Jan. 20, 2016), *perm. app. denied* (Tenn. Sept. 30, 2016). He was

subsequently sentenced to an effective sentence of sixty-five years. *Id*. This Court affirmed his convictions and sentence on appeal. *Id*. at *35. Because the testimony from trial was extensive, the following is a summary of the relevant proof presented at trial as it relates to the petitioner's post-conviction claim.

On the afternoon of August 10, 2012, Oracle West called 9-1-1 to report gunshots fired at her house, where she lived with her son, LaJuan Harbison. *Id*. at *6. On the recording of the 9-1-1 call, which was played for the jury, Ms. West stated her house had been "shot up" by a man named "Cuben Bailey," who had previously called and threatened to "shoot up" her house. *Id*. Ms. West also stated the caller "had a problem" with her son. *Id*. Ms. West estimated that ten shots had been fired. *Id*.

When the State questioned Ms. West about a threatening phone call she received prior to the shooting, she testified she was in her bedroom when the petitioner called her phone and asked to speak with Mr. Harbison. *Id*. at 7. Ms. West then made a "three-way" call to Mr. Harbison, who was also in the house. *Id*. She could not recall what was said during the phone call, but she stated gunshots were fired at her house immediately after the call ended. *Id*.

Officer Rachel Warren of the Knoxville Police Department ("KPD") responded to the 9-1-1 call. *Id*. at *6. Officer Warren located a total of fifteen shell casings and several bullet cores at the scene. *Id*. She collected the shell casings, which consisted of nine .40 caliber casings, four 9-millimeter casings, one .380 caliber casing, and one shell casing not identified in size. *Id*.

On August 21, 2012, KPD Officer Matt Peters came into contact with the petitioner while responding to a traffic accident involving a vehicle in which the petitioner was a passenger. *Id*. at *8. Several other officers arrived at the accident, one of whom was a canine officer who walked his dog around the vehicle. *Id*. After the dog alerted, Officer Peters searched the trunk where he located a backpack containing three weapons: a "Ruger" loaded with 9-millimeter bullets, a "Makarel" loaded with .380 caliber bullets, and a "Smith and Wesson" loaded with .40 caliber bullets. *Id*.

KPD Officer Patricia Resig, a firearms examiner and expert in the field of firearm identification, examined the three weapons confiscated from the trunk as well as the shell casings collected from Ms. West's house. *Id*. Officer Resig determined that two of the 9-millimeter casings were fired from the Ruger and nine of the .40 caliber casings were fired from the Smith and Wesson. *Id*. Officer Resig also viewed a video that was seized from the petitioner's cell phone after the August 21, 2012 traffic accident. *Id*. at *9. The video depicted the petitioner and other persons holding weapons. *Id*. According to Officer Resig, the weapons depicted in the video were consistent with the Ruger and the Smith and Wesson that were recovered from the traffic accident. *Id*.

KPD Officer Ty Compton testified on the petitioner's behalf. *Id*. at *10. Officer Compton testified he responded to the scene at Ms. West and Mr. Harbison's house where he spoke with Ms. West. *Id*. Officer Compton recalled Ms. West told him she had received a call from a man named "Cub[e]n" prior to the shooting. *Id*. According to Officer Compton, Ms. West stated Mr. Harbison and the petitioner knew each other and had "engaged in a prior incident" at a club. *Id*.

On cross-examination, the State played a video recording of Officer Compton's conversation with Ms. West. *Id*. On the recording, Ms. West stated she was inside her house when she received a threatening phone call from "Cuben" immediately before the shooting. *Id*. She stated she was lying on the floor when the shooting started. *Id*. She also stated the caller "had problems" with Mr. Harbison based on a past incident at a nightclub. *Id*.

## II.    Post-Conviction Hearing

The petitioner subsequently filed a pro se petition for post-conviction relief, which was amended after the appointment of counsel. In the amended petition, the petitioner argued trial counsel was ineffective for calling Officer Compton to testify at trial.

The sole witness at the post-conviction hearing was trial counsel, who testified he was not the petitioner's original counsel and only began representing the petitioner once the case was set for trial. After receiving the State's discovery, trial counsel met with the petitioner and discussed trial strategy. Trial counsel's defense theory was that Ms. West and Mr. Harbison were not home when the shooting occurred and that the petitioner was not involved in the shooting.

Trial counsel recalled Ms. West's testifying that both she and Mr. Harbison were home when gunshots were fired at their house. Trial counsel, however, believed Ms. West had indicated in her statement to Officer Compton that she had "come back" to the house after the shooting. Trial counsel believed Ms. West's prior inconsistent statement was the only evidence he could use to impeach her testimony and prove she was not home until after the shooting occurred. However, trial counsel acknowledged his strategy was unsuccessful and stated he thought Officer Compton was a "terrible witness." He also acknowledged that "one of the risks of putting in prior inconsistent statements" is the State has the opportunity to cross-examine the witness.

After reviewing the evidence presented, the post-conviction court denied relief, and this timely appeal followed.

## ANALYSIS

On appeal, the petitioner asserts trial counsel was ineffective for calling Officer Compton as a witness. According to the petitioner, Officer Compton's testimony "provided no information helpful to the defense" and only served to reinforce the State's theory that the petitioner had a motive to threaten or harm Mr. Harbison. The State contends trial counsel made a tactical decision to call Officer Compton, and the petitioner has failed to demonstrate he was prejudiced.

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. *Dellinger v. State*, 279 S.W.3d 282, 293 (Tenn. 2009) (citing U.S. Const. amend. VI; *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980)). When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," despite the fact that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 688-89. Prejudice requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). The *Strickland* standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. *State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

When reviewing trial counsel's performance, this Court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689). The fact that a trial strategy or tactic failed or was detrimental to the defense does not, alone, support a claim for ineffective assistance of counsel. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Deference is given to sound tactical decisions made after adequate preparation for the case. *Id.*

The burden in a post-conviction proceeding is on the petitioner to prove her allegations of fact supporting her grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); *see Dellinger*, 279 S.W.3d at 293-94. On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. *Fields v. State*, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. *Id*. Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. *Id*. at 457.

Here, the petitioner argues trial counsel was ineffective for calling Officer Compton to testify because his testimony was only helpful to the State's case against the petitioner. In denying relief on the petition, the post-conviction court stated its findings as follows:

> I've been going through my notes. In my notes, one of the first things the State presented at trial was a 911 call where [Ms. West] . . . calls 911 and is obviously excited and shouting out, "[o]ur house got shot up by Cuben Bailey." She didn't find out until sometime later that his name was Lagrone.

> Her next statement was "[p]robably looking for [Mr. Harbison] from a long time ago," which I took -- when the evidence developed, I took that to be a reference to the nightclub fight or whatever it was they were involved in.

> . . . .

> . . . [Trial counsel] called [Officer Compton], and [Officer Compton] didn't say exactly what he expected or said something he didn't expect [Officer Compton] to say. That -- that happens. Criticizing trial counsel's tactic is not a basis for post-conviction relief.

> . . . .

> Given what was on [Ms. West's] 911 call that was introduced almost the first thing by the State -- and that, basically, already revealed what -- what is being complained about the testimony of [Officer] Compton, that she told him prior to the shooting she got a call from someone she knew,

Cuben-something. . . . She said [Mr. Harbison] and Cuben were involved in a[n altercation] and [Mr. Harbison] testified. And, again, those -- reference to that event had already been made.

So even if it was a mistake -- and I'm not -- I do not find that it was a mistake. But if it was a mistake . . . for [trial counsel] to call [Officer] Compton, its consequences, its importance is greatly diminished by the fact that this had already been presented to the jury in the form of the 911 call.

Our review of the record supports the post-conviction court's findings. At trial, Ms. West testified she was at home when gunshots were fired at her house. Trial counsel believed that Ms. West's statement to Officer Compton indicated she was not home during the shooting, so he called Officer Compton as a witness. However, Officer Compton did not testify the way trial counsel anticipated, and trial counsel later considered him a "terrible witness." During cross-examination of Officer Compton, the State introduced a video recording of Ms. West's statement to Officer Compton, wherein she claimed that she was, in fact, home during the shooting. While trial counsel's decision to call Officer Compton was unsuccessful, it was a tactical decision based on his belief that he could impeach Ms. West's testimony and prove she was not home during the shooting. The fact that a trial strategy failed is not, by itself, enough to establish that trial counsel was deficient. *Cooper*, 847 S.W.2d at 528. Regardless, as noted by the post-conviction court, all the evidence introduced through Officer Compton, including the petitioner's threatening phone call to Ms. West and his prior incident with Mr. Harbison at a nightclub, had already been introduced through a recording of Ms. West's 9-1-1 call as well as Ms. West's testimony. The State also introduced evidence that the petitioner was found in possession of guns which matched the guns used in the shooting, and a video depicted him holding those guns. Accordingly, the petitioner has failed to demonstrate that the outcome of his trial would have been different if trial counsel had not called Officer Compton as a witness. Therefore, the petitioner has failed to demonstrate he was prejudiced, and he is not entitled to relief.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the post-conviction court's judgment denying the petitioner post-conviction relief.

_____
J. ROSS DYER, JUDGE